# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | |
|---|---|
| RICKY GREEN,<br><br>        Plaintiff,<br><br>v.<br><br>CUMMINS INC.,<br><br>        Defendant. | Case No. 5:25-cv-607<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Defendant Cummins Inc. ("Cummins" or "Defendant"), by and through its undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 7.1, hereby submits this Memorandum of Law in Support of Its Motion to Dismiss Plaintiff Ricky Green's ("Plaintiff") First Amended Complaint as follows:

## I. INTRODUCTION

Plaintiff's second bite at the apple via a First Amended Complaint following Defendant's motion to dismiss his original Complaint still fails to state claims for a "Violation of Title VII of The Civil Rights Act of 1964" based on gender discrimination and hostile work environment as well as intentional infliction of emotional distress ("IIED") and negligent retention and/or supervision under North Carolina common law. *See* Plaintiff's First Amended Complaint ("FAC") at ¶¶ 41-76. The First Amended Compliant simply addresses Defendant's failure to exhaust argument. It adds nothing to the other legal arguments Defendant made in its prior Motion to Dismiss. As reviewed herein, the First Amended Complaint, like Plaintiff's original Complaint, still lacks the requisite factual assertions to proceed regarding any of the aforementioned claims and remains subject to dismissal under Rule 12(b)(6). Accordingly, Cummins respectfully requests the Court dismiss the First Amended Complaint in total and with prejudice.

## II. PROCEDURAL BACKGROUND AND FACTS AS ALLEGED IN THE FIRST AMENDED COMPLAINT[1]

Plaintiff initially filed this lawsuit in Nash County Superior Court on or about August 18, 2025. *See generally* FAC. On September 23, 2025, Defendant removed this matter to the United States District Court for the Eastern District of North Carolina. (ECF No. 1). This Court filed notice of removal the next day. (ECF No. 4). Defendant filed a Motion to Dismiss the Complaint on October 30, 2025. (ECF No. 11). In response, Plaintiff filed the First Amended Complaint on November 20, 2025. (ECF No. 14). On November 25, 2025, the Court entered a text order denying Defendant's motion to dismiss in light of the filing of the First Amended Complaint. (Nov. 25, 2025 Text Order). For many of the same reasons, Defendant now submits its Motion to Dismiss the First Amended Complaint in its entirety.

The relevant background allegations forming the basis for this Motion remain unchanged and are the mirror image contained in his original Complaint. Specifically, Plaintiff alleges that he was employed by Cummins for thirty-seven (37) years and began working for the company as a line stocker in the Receiving Department in 1988. FAC at ¶ 6. What follows in the First Amended Complaint is a recitation of unrelated[2], untimely[3] grievances dating back to 2018; hyperbolic,

---

[1] Defendant accepts well-pleaded facts (but not legal conclusions) as true for purposes of this Motion only. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (recognizing that "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes").

[2] Plaintiff's first allegation occurred seven years ago—an allegation that he was "required to stand at the front of the facility, pose for a mugshot, and hold a sign labeled 'crazy' in connection with an annual "United Way Jail-A-Thon." FAC at ¶ 9. Plaintiff fails to connect this allegation to any indication that he was ridiculed due to his gender and generally describes that he was "deeply uncomfortable" and had to pay "$80 of his own money to avoid wearing the jail suit, which he found demeaning and stigmatizing." *Id.* at ¶ 10. Notably, Plaintiff has not asserted an ADA claim in connection with this lawsuit.

[3] Plaintiff pleads allegations of misconduct from 2018 through 2022, which would likely be time-barred since a Charge of Discrimination must be filed within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e5(e)(1).

conclusory statements[4]; vague assertions[5]; and descriptions of an alleged personality conflict between Plaintiff and a lead trainer[6], which was ultimately rectified by Plaintiff's reassignment to a different employee.[7] Plaintiff also asserts he took approved FMLA leave on two different occasions—the first leave period allegedly lasted from July 30, 2022 through August 15, 2022 and the second leave period allegedly lasted from August 29, 2024 through September 17, 2024.[8] FAC

---

[4] For example, Plaintiff alleges he was "subjected to *ongoing* workplace harassment and hostility" and "*repeatedly* forced to contact corporate leadership and human resources to report unfair treatment and to contest unjustified demotions or suspensions[…]." FAC ¶ 8 (Emphasis added.). The First Amended Complaint describes three specific instances of alleged conduct—those being: the Jail-A-Thon (2018); the report of sleeping on the job (2018); and Audriette Joyner's refusal to train Plaintiff. *See* FAC ¶¶ 9-11, 12-13, 26, 29. None of these alleged specific instances are tied to an allegation of gender discrimination and could hardly be described as "on-going." Similarly, Plaintiff alleges only two specific meetings where he mentioned his concerns about training—first, a meeting he allegedly called on August 8, 2024, and then a meeting with HR Generalist Bolajoko Ifemade on December 2, 2024. *See id.* at ¶¶ 28, 33. Plaintiff does not allege that he reported any gender discrimination in either of these meetings. Further, two meetings over a span of seven years does not amount to "repeated" reporting.

[5] All other allegations regarding reports to Defendant about any complaints are general and non-specific references to submitting complaints to the Ethics Hotline, "documenting the incidents of discriminatory treatment and submit[ing] them to his manager," and "multiple meetings with Human Resources." *See id*. at ¶ 13, 27. Plaintiff fails to provide any detail about these alleged reports or meetings with HR or even name the manager to whom he submitted his alleged complaints. *See id.* Plaintiff also alludes to "unjustified demotions or suspensions initiated by *certain* supervisors," but does not identify any of the "certain" supervisors. *Id*. at ¶ 8 (Emphasis added.). Additionally, Plaintiff makes vague allegations that "[f]emale employees hired the same year as [Plaintiff] were trained and promoted beyond the entry-level task" and that "in September 2024, [Plaintiff] continued to face the same discriminatory conditions and still was not provided proper training, while new female employees advanced to higher-level tasks." *Id.* at ¶ 25, 32. Plaintiff does not provide names or any specific comparator information regarding the "female employees" who were trained or promoted ahead of him. *See id.*

[6] The First Amended Complaint centers on an alleged conflict between Plaintiff and lead trainer Ms. Joyner. *See id.* at ¶¶ 26-29. Plaintiff fails to allege that Ms. Joyner refused to train him due to his gender. *See id.* Rather, the First Amended Complaint alleges that Ms. Joyner refused to train him due to his lack of skill or skill set for the job. *Id.* at ¶ 29. Further, Plaintiff does not allege that Ms. Joyner was his supervisor or had any control over Plaintiff's advancement at Cummins.

[7] In or around December 2024, Plaintiff alleges that he was "reassigned" to work with Amy Clary, and that Ms. Clary "apologized to [Plaintiff] for having previously mistreated him." *Id.* at ¶ 34-35. Plaintiff alleges no further specific incidents of alleged mistreatment after December 2024.

[8] Of note, Plaintiff does not assert FMLA interference or retaliation claims in connection with this lawsuit. *See* FAC.

at ¶¶ 21, 31. However, Plaintiff does not plead any facts regarding the alleged conditions for which he took FMLA leave, how those conditions were caused or exacerbated by any alleged gender-based discrimination or hostile work environment, and/or how any medical condition or alleged deterioration of his mental health were caused by gender discrimination and/or a hostile work environment perpetuated by Cummins. *See id.* Rather, Plaintiff relies on bare assertions that "discriminatory conduct and persistent mistreatment[…] had a severe and detrimental impact on [Plaintiff's] health" and that "[t]he stress and emotional toll of being subjected to hostility, exclusion, and retaliation at work significantly aggravated [Plaintiff's pre-existing conditions]." *Id.* at ¶ 38.

Ultimately, Plaintiff claims, without asserting any facts, that he "was denied opportunities for advancement within the company, including promotions, access to higher-level responsibilities, and increased compensation" as "a direct result of the discrimination and hostile work environment" described in the First Amended Complaint. *Id.* at ¶ 37. The First Amended Complaint lacks any information about specific opportunities that Plaintiff missed due to gender discrimination, promotions he was not chosen for due to his gender,[9] that he was barred access to higher-level responsibilities due to his gender, or that he was denied compensation increases due to his gender. *See generally* FAC.

Additionally, Plaintiff fails to assert facts to establish that any alleged action by Cummins rose to "extreme and outrageous" conduct to substantiate the first element of an IIED claim. Since Plaintiff fails to properly plead an IIED claim and pleads no other tort, Plaintiff also fails to plead facts to substantiate a negligent retention and/or supervision claim.

---

[9] To the contrary, the First Amended Complaint reveals that Plaintiff allegedly did receive a position that he wanted—the North Shipping Office Technician position. *See id.* at ¶¶ 16-18.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to challenge the sufficiency of the allegations in a complaint. To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 62, 677-78 (2009)(quoting Fed. R. Civ. P. 8(a)(2)). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Although plausibility does not entail probability, the facts in the complaint must establish more than the mere possibility that a defendant acted unlawfully. *Id*.

In considering whether the plaintiff has established a plausible claim for relief, the court is bound to accept the well-pleaded facts of the complaint as true; however, conclusory assertions of law or fact are not entitled to the assumption of truth. *Id.* at 549-50; *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc.,* 591 F.3d 250, 255 (4th Cir. 2009)(Emphasis added.). "Facial plausibility means that the facts pled 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' and mere recitals of the elements of a cause of action supported by conclusory statements" are legally insufficient to overcome a Rule 12(b)(6) motion. *Clark v. Wells Fargo Bank, N.A.*, 2017 WL 4485897, at *1 (E.D.N.C. Jul. 27, 2017) (quoting *Iqbal*, 556 U.S. at 678). In other words, this plausibility standard requires a plaintiff to show at the pleading stage that success on the merits of his claim is more than a "sheer possibility." *See Iqbal*, 556 U.S. at 678. In sum, "[w]hile a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts

that support a [plausible] claim for relief." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (emphasis in original).

## IV. LAW AND ARGUMENT

Plaintiff's First Amended Complaint fails to plead facts beyond conclusory assertions of law or fact to support claims for Title VII gender-based discrimination and hostile work environment, intentional infliction of emotional distress, or negligent retention and/or supervision.

### A. PLAINTIFF'S TITLE VII CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiff's First Amended Complaint fails to set forth a factually sufficient basis to support a claim for gender-based discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiff's First Amended Complaint alleges no direct evidence of gender discrimination. "Absent direct evidence [of discrimination], the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment of similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC,* 375 F.3d 288, 295 (4th Cir. 2004)). Here, Plaintiff once again fails to allege he was satisfactorily performing his job, that he experienced any adverse employment action as the result of any gender-based discrimination or provide any specific instances in which female employees were treated differently than him. Therefore, Plaintiff does not sufficiently plead gender-based discrimination under Title VII.

Regarding Plaintiff's hostile work environment claim, a plaintiff must allege: (1) he experienced unwelcome harassment; (2) the harassment was based on his gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create

an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), *cert. denied*, 540 U.S. 940 (2003). Here, Plaintiff still does not directly allege that he was harassed by any specific person, but assuming *arguendo* Plaintiff intends that Defendant and this Court surmise that he was harassed by Ms. Joyner, he fails to allege that the harassment was gender-based. First, Plaintiff does not allege that Ms. Joyner refused to train him because he is a man, rather, Ms. Joyner simply refused to do it stating "it ain't gonna happen" and that Plaintiff has "no skills or skill set." FCA ¶ 29. Plaintiff also fails to allege or show that Ms. Joyner treated female employees any differently than she treated male employees. Further, there is no indication in the First Amended Complaint that any alleged harassment was "severe and pervasive" other than Plaintiff's recitation of the words "severe and pervasive" under Count II of the First Amended Complaint. *Id.* at ¶ 60. Plaintiff has alleged and described a personality conflict with another employee that appeared to be remedied when he was reassigned to work with Ms. Clary. There are no facts in the First Amended Complaint sufficient to state a claim for Title VII hostile work environment.

## B. PLAINTIFF'S REMAINING CLAIMS SHOULD ALSO BE DISMISSED PURSUANT TO RULE 12(B)(6).

The First Amended Complaint likewise lacks facts to support Plaintiff's IIED and negligent supervision and retention claims.

### 1. *Plaintiff Fails to Plead Facts to Sufficiently Support the Outrageous Conduct Necessary for His IIED Claim as a Matter of Law.*

Plaintiff's allegations are insufficient to establish an IIED claim under North Carolina law. In an action for IIED, the essential elements are: "(1) extreme and outrageous conduct by the defendant; (2) which is intended to and does in fact cause; (3) severe emotional distress." *Waddle v. Sparks*, 331 N.S. 73, 82, 414 S.E.2d 22 *27 (1992)(quoting *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981)). *Guthrie v. Conroy*, 152 N.C. App. 15, 22 (N.C. Ct. App. 2002)("Conduct

is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."); *See also Wagoner v. Elkin City Sch.'s Bd. of Educ.*, 113 N.C. App. 579, 586, 440 S.E. 2d 119, 123 (1993). Whether or not conduct constitutes extreme and outrageous behavior is initially a question of law for the court. *Briggs v. Rosenthal*, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311, cert. denied, 314 N.C. 114, 332 S.E.2d 479 (1985); *see Wagoner*, 113 N.C. App. at **586-87 (allegations of being insulted and suffering indignities are insufficient to sustain an IIED claim).

Here, Plaintiff does not plead any facts that amount to "extreme and outrageous conduct." The only specific conduct alleged in the First Amended Complaint is Ms. Joyner's alleged refusal to train Plaintiff, and her alleged statement that Plaintiff had "no skills or skill set." FAC at ¶ 29. While it may be insulting, stating that someone has "no skills or skill set" is not "beyond all possible bounds of decency" or "atrocious[…] and utterly intolerable in a civilized community." *See Gutherie*, 152 N.C. App. at 22, *Wagoner* 113 N.C. App. at 586. To the extent that Plaintiff was insulted by Ms. Joyner's alleged statements and failure to train him, Plaintiff alleges Cummins reassigned him to work with Ms. Clary four months afterward. FAC at ¶ 34. Plaintiff alleges no further specific instances of alleged mistreatment after he began working with Ms. Clary. *See* FAC. Plaintiff also does not allege facts that Cummins intended to inflict severe emotional distress via Ms. Joyner's alleged conduct and/or any alleged failure to change Plaintiff's work situation. Lastly, Plaintiff does not plead facts as to any severe emotional distress he experienced as a result of any of the alleged insulting comments and behavior. If this Court is to surmise that Plaintiff took two periods of FMLA due to severe emotional distress based on the conclusory language of the First Amended Complaint, two periods of FMLA lasting approximately three weeks each, after

which Plaintiff returned to work without incident, hardly substantiate facts showing "severe emotional distress."

Plaintiff fails to plead facts to substantiate an IIED claim. Therefore, this Court should dismiss his IIED claim as well.

### 2. *Plaintiff Cannot Establish the Tort Necessary to Bring His Negligent Retention and/or Supervision Claim.*

Plaintiff cannot prove his negligent retention and/or supervision claim under North Carolina law because he has not pled a tortious act. "North Carolina law requires, as an essential element of a claim for negligent retention, that an employee of the employer committed a tortious act resulting in plaintiffs' injuries. In other words, North Carolina courts will not hold an employer vicariously liable unless an employee has committed a cognizable wrong against the plaintiff." *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 774 (4th Cir. 1997)(citing *Waddle v. Sparks*, 414 S.E.2d 22, 29 (N.C. 1992)(internal brackets and quotations omitted.). As such, a claim for negligent hiring, supervision, and retention is recognized in North Carolina when plaintiff proves: "(1) the specific negligent act on which the action is founded… (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the [principal] of such unfitness or bad habits, or constructive notice, by showing that the [principal] could have known the facts had he used ordinary care in oversight and supervision…; and (4) that the injury complained of resulted from the incompetency proved." *Taft v. Brinley's Grading Servs., Inc.*, 225 N.C. App. 502, 515-16, 738 S.E.2d 741, 750 (2013).

Plaintiff's IIED claim set forth in his First Amended Complaint fails for lack of factual support in the First Amended Complaint, and Plaintiff does not plead any other tortious act. For this reason, his negligent retention and/or supervision claim must also be dismissed.

## V.  CONCLUSION

Because Plaintiff's First Amended Complaint has not alleged facts sufficient to plausibly state any of the causes of action set forth in the First Amended Complaint, the Court should dismiss the First Amended Complaint in its entirety, with prejudice.

Dated: December 9, 2025.

/s/ Jennifer Staples
Stephen D. Dellinger, Bar No. 16609
sdellinger@littler.com
Jennifer Staples, Bar No. 39833
jstaples@littler.com
LITTLER MENDELSON, P.C.
620 South Tryon Street, Suite 950
Charlotte, North Carolina 28202
Telephone: 704.972.7000
Facsimile: 704.333.4005

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2025, I electronically filed the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will notify the following counsel of record:

Taylor C. Rosbrook
trosbrook@hairstonlane.com
James E. Hairston, Jr.
jhairston@hairston.com
HAIRSTON LANE, PA
434 Fayetteville St., Ste. 2350
Raleigh, NC 27601
Telephone: (919) 838-5295
Facsimile: (888) 510-1160

*Attorneys for Plaintiff*

/s/ *Jennifer Staples*
Stephen D. Dellinger, Bar No. 16609
sdelliger@littler.com
Jennifer Staples, Bar No. 39833
jstaples@littler.com
LITTLER MENDELSON, P.C.
620 South Tryon Street, Suite 950
Charlotte, North Carolina 28202
Telephone: 704.972.7000
Facsimile: 704.333.4005

*Attorneys for Defendant*