UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:25-cv-607-FL

RICKY GREEN,                                  )
                                              )
          Plaintiff,                          )
                                              )
     v.                                       )      **MEMORANDUM IN OPPOSITION
                                              )      OF DEFENDANT'S MOTION TO
CUMMINS INC.,                                 )             DISMISS**
                                              )
          Defendant.                          )
                                              )
                                              )

NOW COMES the Plaintiff Ricky Green ("Plaintiff" or "Ricky"), by and through undersigned counsel, and respectfully submits this Memorandum in Opposition of Defendant Cummins, Inc.'s ("Defendant" or "Cummins") Motion to Dismiss.

## STATEMENT OF THE CASE

On July 29, 2025, Plaintiff initiated this action by filing a Complaint in the Nash County Superior Court, seeking redress for violation of rights protected under Title VII of the Civil Rights Act of 1964 and North Carolina common law. (*Green v. Cummins; 25CV004639-630; Nash County*) On September 23, 2025, Defendant removed the case to the United States District Court for the Eastern District of North Carolina. (ECF No. 1) On October 30, 2025, Defendant moved to dismiss the claims against it for failure to state a claim. (ECF No. 11) In response, Plaintiff filed his Amended Complaint, as of right, on November 20, 2025. (ECF No. 13) On December 9, 2025, Defendant filed a Motion to Dismiss the claims against it with a supporting memorandum of law. (ECF Nos. 16 & 17) This memorandum is respectfully submitted in opposition of that motion.

<u>**STATEMENT OF FACTS**</u>

Plaintiff, Ricky, was employed by Defendant Cummins, Inc. at its facility in Rocky Mount, North Carolina, for approximately thirty-seven (37) years. He began working for the company in 1988 as a line stocker in the Receiving Department. (Amend. Comp. ¶ 6) Due to his exemplary work performance, Ricky was promoted to the position of Supervisor in the Receiving Department. (*Id.* at ¶ 7) Throughout his long tenure with Cummins, Ricky was subjected to ongoing workplace harassment and hostility. He was repeatedly forced to contact corporate leadership and human resources to report unfair treatment and to contest unjustified demotions or suspensions initiated by certain supervisors. (*Id.* at ¶ 8)

On or about October 1, 2018, Defendant hosted an annual "United Way Jail-A-Thon" fundraising event at the plant, where employees could pay to have coworkers "arrested" for humorous reasons. The chosen employee would then wear a jail uniform and pose for a mugshot until they raised double the amount to "post bail." (*Id.* at 9) Ricky's team raised $40 to have him "arrested" for "being crazy." Ricky was required to stand at the front of the facility, pose for a mugshot, and hold a sign labeled "crazy." Deeply uncomfortable with this, Ricky paid $80 of his own money to avoid wearing the jail suit, which he found demeaning and stigmatizing. (*Id.* at ¶ 10) Ricky has been diagnosed with major depressive disorder and suffers from a seizure disorder, both of which make references to being "crazy" not only insulting, but also psychologically harmful and stigmatizing. (*Id.* at ¶ 11)

On or about November 29, 2018, Ricky was called into a meeting and informed that an employee had recorded him "nodding off" at his desk on November 21, 2018. Ricky explained that his behavior was related to his seizure disorder, but his supervisor disregarded his explanation and immediately demoted him to a forklift driver position in the Materials Department. (*Id.* at ¶

2

12) Ricky submitted a formal complaint through the company's Corporate Ethics Hotline and provided documentation of his medical condition and medication side effects. Despite this, the demotion was not reversed. (*Id.* at ¶ 13) Shortly after demotion, Human Resources requested two (2) volunteers to transfer from the Materials Department to the North Shipping Department. Ricky volunteered and was accepted for the transfer. (*Id.* at ¶ 14) However, Ricky was again placed on forklift duty, a position that posed significant safety risks due to his medical condition. Ricky's healthcare providers submitted multiple written requests for accommodations to remove him from forklift duty, but these requests were denied or ignored by Defendant. (*Id.* at ¶ 15)

On or about April 24, 2019, a job posting became available for a North Shipping Office Technician. (*Id.* at ¶ 16) Ricky made several expressions of interest in the Technician position and was finally offered the role in April 2022. (*Id.* at ¶ 17) During Ricky's 37 years with Cummins, no male had ever been hired into an office technician position. Ricky was the first male to hold this role. (*Id.* at ¶ 18) Within two (2) weeks of starting in the office, Ricky was reassigned to forklift duty due to staffing shortages. (*Id.* at ¶ 19) Human Resources assured Ricky he would return to the office and resume training on September 26, 2022. (*Id.* at ¶ 20) Ricky was approved for FMLA leave from July 30, 2022, to August 15, 2022 due to his medical condition. (*Id.* at ¶ 21) Upon release to return to work, Cummins' onsite physician-imposed restrictions that Ricky should not operate mobile equipment or work at heights due to medical risks. Cummins extended his leave through September 15, 2022. (*Id.* at ¶ 22)

Ricky resumed his office position on September 15, 2022, but soon experienced discriminatory and exclusionary treatment from his female coworkers, who refused to train him as the only male in the office. (*Id.* at ¶ 23) The office training process involves staged advancement, beginning with checking truck drivers in and out. Training is typically provided for advancement

to other tasks, but Ricky was systematically denied that training. (*Id.* at ¶ 24) Female employees hired the same year as Ricky were trained and promoted beyond the entry-level task, while Ricky remained stuck checking in truck drivers for over two (2) years. (*Id.* at ¶ 25) Audriette Joyner, the designated team lead trainer, openly stated on multiple occasions that she would not train Ricky, even after the manager specifically assigned her to do so. (*Id.* at ¶ 26) Ricky documented these incidents of discriminatory treatment and submitted them to his manager. He also had multiple meetings with Human Resources and filed a complaint through the Corporate Ethics Hotline, all without resolution. (*Id.* at ¶ 27) On or around August 8, 2024, Ricky called a team meeting of approximately 10-15 people to address the ongoing training disparities and express concern about the refusal to provide him with equal training opportunities. (*Id.* at ¶ 28) During the meeting, Audriette Joyner again declared in front of the entire group, including the manager, that she would not train Ricky, stating explicitly, "It ain't gonna happen." She also commented that Ricky was hired with "no skills or skill set." (*Id.* at ¶ 29) Ricky's manager responded by stating that Ricky did, in fact, have system knowledge from his prior department. (*Id.* at ¶ 30) Following this meeting, Ricky's mental health deteriorated further, and he was placed on FMLA leave from August 29, 2024 through September 17, 2024. (*Id.* at ¶ 31)

Upon returning to work in September 2024, Ricky continued to face the same discriminatory conditions and still was not provided proper training, while new female employees advanced to higher-level tasks. (*Id.* at ¶ 32) On or about December 2, 2024, Ricky met with HR Generalist Bolajoko ("Nikky") A Ifemade to report the ongoing issues regarding the office training. Nikky stated she would consult with Ricky's manager. (*Id.* at ¶ 33) A few days later, Ricky's manager reassigned him to assist employee Amy Clary with planning and creating load assignments. (*Id.* at ¶ 34) After getting to know Ricky during training, Amy Clary apologized to

4

Ricky for having previously mistreated him based on how others were treating him and acknowledged that Ricky did not deserve such treatment. (*Id.* at ¶ 35)

Since Ricky's complaints about the lack of training and discriminatory treatment, anonymous and false reports were made against him in what appears to be a retaliatory effort to get him disciplined or terminated. (*Id.* at ¶ 36) As a direct result of the discrimination and hostile work environment described above, Ricky was denied opportunities for advancement within the company, including promotions, access to higher-level responsibilities, and increased compensation. (*Id.* at ¶ 37) The discriminatory conduct and persistent mistreatment also had a severe and detrimental impact on Ricky's health. The stress and emotional toll of being subjected to hostility, exclusion, and retaliation at work significantly aggravated Ricky's diagnosed Major Depressive Disorder and seizure disorder, both of which were known to Defendant. (*Id.* at ¶ 38) Due to the worsening of his medical conditions caused by the work environment, Ricky was forced to take periods of medical and FMLA leave. These absences, directly linked to the discrimination, resulted in loss of wages and further disrupted his ability to advance within the company. (*Id.* at ¶ 39) Ricky's emotional and physical well-being, financial stability, and career trajectory were all negatively impacted as a result of Defendant's failure to address or remedy the discriminatory treatment and hostile work environment. (*Id.* at ¶ 40) On April 30, 2025, Ricky received his Right-to-Sue Notice from the Equal Employment Opportunity Commission regarding his present claims against Defendant. (*Id.* at ¶ 41)

## **STANDARD OF REVIEW**

When considering a Rule 12(b)(6) motion, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus.,* 637 F.3d 435, 440 (4th Cir. 2011). To prevail on a motion to

dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff need only provide a "short and plain statement of his claim showing that he is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant *fair notice* of what the … claim is and the grounds upon which it rests," *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197 (2007)) (per curiam) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *Fair notice* is provided by setting forth enough facts for the claim to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 570, 127 S.Ct. 1955.

To sufficiently plead a claim, the Federal Rules of Civil Procedure require that "a pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief…" *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (2019). This pleading standard does not require detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, Rule 12(b)(6) does not require a "heightened fact pleading of specifics"; instead, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974). In consideration of such a motion, the "complaint is construed liberally in the plaintiff's favor, and the Court grants plaintiff the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ARGUMENT

**I. PLAINTIFF HAS SUFFICIENTLY PLEADED GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.**

Although a plaintiff need not establish a *prima facie* case of discrimination to survive the motion to dismiss, the *prima facie* factors can be instructive in determining whether Plaintiff has set out a plausible claim." *Wright-Raby v. Dundee Manor, LLC,* 2019 U.S. Dist. LEXIS 81214, *8. To state a *prima facie* case of Title VII discrimination, Plaintiff must set out facts showing: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010). Establishing a *prima facie* case of discrimination is "not onerous." *Evans v. Techs. Applications & Servs. Co.,* 80 F.3d 954, 960 (4th Cir. 1996) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

The first element – that Plaintiff is a member of a protected class – appears undisputed. Plaintiff, a male in an otherwise all-female cohort, alleges that during his thirty-seven years with Cummins, no male had ever been hired into an office technician position and that he was the first male to hold this role. (Amend. Comp. ¶ 18)

Defendant asserts, in a conclusory manner, that Plaintiff has failed to plead the remaining elements of his claim – namely, satisfactory job performance, an adverse employment action, and disparate treatment compared to similarly situated individuals outside his protected class. A straightforward reading of Plaintiff's Amended Complaint demonstrates that these assertions are unfounded.

7

### A. Satisfactory Job Performance

In his Amended Complaint, Plaintiff alleges "exemplary job performance," which resulted in promotions – including to supervisory roles – and culminated in his selection as the first male ever offered an office technician position at the company. (Amend. Comp. ¶¶ 7, 17-18) These allegations demonstrate not only satisfactory performance, but performance sufficiently strong to warrant advancement into roles historically denied to male employees.

Moreover, when Plaintiff was expressly denied equal training opportunities afforded to female employees by Audriette Joyner ("Joyner"), management itself acknowledged that Plaintiff possessed the requisite skills for his position, was qualified to hold the role, and that Joyner was required to provide him with appropriate training. (Amend. Comp. ¶¶ 26, 29-30) Plaintiff has sufficiently pleaded that he consistently performed his job satisfactorily throughout his thirty-seven-year tenure with Defendant, advancing within the company and breaking longstanding gender barriers.

### B. Adverse Employment Action

An adverse employment action is not limited to termination; termination is merely one example. An "adverse employment action" is one that "constituted a significant change in employment status, such as hiring, firing, **failing to promote**, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freighliner, LLC,* 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761).

Plaintiff consistently and repeatedly alleges in his Amended Complaint that he suffered adverse employment actions as a result of his gender. Specifically, he alleges that "the office training process involves staged advancements…and is typically provided for advancement to

8

other tasks, but Ricky was systematically denied that training," and that "as a direct result of the discrimination…Ricky was denied opportunities for advancement within the company, including promotions, access to higher-level responsibilities, and increased compensation." (Amend. Comp. ¶¶ 24 & 37) Accordingly, any assertion that Plaintiff failed to plead an adverse employment action is incorrect.

### C. *Disparate Treatment*

"A Title VII plaintiff '[is] not required as a matter of law to point to a similarly situated comparator in order to prevail on a discrimination claim.'" *Wright-Raby,* 2019 U.S. Dist. LEXIS at * 8 (quoting *Hurst v. D.C.,* 681 F. App'x 186, 191 n.5 (4th Cir. 2017). "The fourth prong of the *prima facie* case may also be satisfied by demonstrating the position at issue was filled by someone outside the protected class or there is some other evidence sufficient to give rise to an inference of unlawful discrimination." *Wright-Raby*, 2019 U.S. Dist. LEXIS at *9. In *Wright-Raby*, the court held that the plaintiff sufficiently pleaded a Title VII gender discrimination claim even though she did not specifically identify any comparators, instead alleging that she was treated differently from male employees. *Id.* at *12. The defendant in *Wright-Raby* further argued that the claim was deficient because it lacked sufficient detail regarding male comparators who were allegedly treated more favorably. *Id.* The court rejected that argument, agreeing with the plaintiff that "details regarding would-be comparators is not necessarily required." *Id.*

Here, Plaintiff has again sufficiently pleaded he was treated differently than the female employees around him. He alleges that "female employees hired the same year as Ricky were trained and promoted beyond the entry-level task, while Ricky remained stuck checking in truck drivers for over two years," and that "new female employees advanced [past Plaintiff] to higher-level tasks." (Amend. Comp. ¶¶ 25 & 32) Plaintiff further alleges that a female co-worker, Amy

Clary, later admitted that the women treated him differently and that he did not deserve such treatment, apologizing for her role in the conduct. (*Id.* at ¶ 35)

Although framed in conclusory terms, Defendant appears to argue that Plaintiff must plead specific, detailed facts demonstrating precisely how each comparator was treated more favorably. Plaintiff disputes that premise and, in any event, such a requirement is inconsistent with controlling law. Plaintiff is not required at the pleading stage to identify specific comparators by name. Rather, alleging that female employees hired after him were trained and promoted more quickly, while he was denied comparable opportunities, is sufficient to place Defendant on notice of the conduct at issue.

Defendant can readily ascertain the relevant comparators by reviewing its own personal records reflecting hiring, training, and promotion decisions during Plaintiff's tenure as an office technician. Indeed, Plaintiff has alleged more than what it required at this stage – namely, facts that, presumed as true, give rise to a plausible inference of unlawful discrimination. Defendant's argument improperly seeks to impose a summary-judgment-level burden at the pleading stage, before Defendant has first met their own burden of production.

"With respect to pleading requirements… a plaintiff pursuing a Title VII claim can survive a Rule 12(b)(6) motion to dismiss so long as the complaint satisfies the requirements of Rule 8(a), in that it gives the employer fair notice of the basis for the plaintiff's claims. *Jones v. Karnick, Inc.,* 2011 U.S. Dist. LEXIS 151420, *7; *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 (2002) (holding an employment discrimination complaint need not contain specific facts establishing a *prima facie* case of discrimination under the *McDonnell Douglas* framework but instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief"). Here, Defendant explicitly argues that Plaintiff must allege "specific instances,"

despite our courts having repeatedly held that such specificity is not required at the motion-to-dismiss stage. Plaintiff's well-pleaded Amended Complaint more than satisfies the notice requirement, providing Defendant with fair notice of the basis for his Title VII discrimination claim. The Complaint identifies relevant time periods, specific conversations, and concrete actions, all of which support Plaintiff's claims for relief, and our courts have consistently held that establishing a *prima facie* case of discrimination is not intended to be an "onerous burden." *Evans,* 80 F.3d at 960.

## II. PLAINTIFF HAS SUFFICIENTLY PLEADED A HOSTILE WORK ENVIRONMENT CLAIM.

Title VII prohibits employers from discriminating "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's…sex." 42 U.S.C. § 2000e-2(a)(1). The statute encompasses situations that subject individuals to "work[ing] in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993). To establish a *prima facie* case of gender discrimination or sexual harassment based on hostile work environment, plaintiff must show that (1) he was subjected to unwelcome conduct; (2) the conduct was based on plaintiff's gender; (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment; and (4) the conduct is attributable to plaintiff's employer. *Ocheltree v. Scollon Productions, Inc.,* 335 F.3d 325, 331 (4th Cir. 2003).

### A. *Unwelcome Conduct Based On Plaintiff's Gender*

Defendant appears to argue that Plaintiff has not alleged he was subjected to unwelcome conduct based on his gender, seemingly because neither Joyner nor anyone else expressly stated that he was treated differently for being a man. This argument is not only contrary to the allegations in the Amended Complaint, but also unrealistic and inconsistent with established law. A plaintiff

need only allege evidence that the alleged abuse would not have occurred "but for" his gender. *Magassouba v. Prince George's Cnty.,* 773 F. Supp. 3d 196, 224 (2025). Defendant has not cited any authority requiring a plaintiff to allege that a defendant explicitly stated the discriminatory motive behind a hostile work environment, which rarely occurs in practice.

Employment discrimination based on gender…in violation of Title VII…can be proven by direct or circumstantial evidence. *See United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 03 S. Ct. 1478, 75 L. Ed. 2d 403 n.3 (1983). Direct evidence is "conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Spain v. Va. Commonwealth Univ.,* 2009 U.S. Dist. LEXIS 70524 (quoting *Rhodes v. FDIC,* 257 F.3d 373, 391-92 (4th Cir. 2001)). Absent direct evidence, gender discrimination cases are established through the burden shifting scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *See Bonds v. Leavitt,* 629 F.3d 369, 386 (4th Cir. 2011). The employer's burden at this stage "is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). If the employer articulates such a reason, the burden returns to the plaintiff to prove that the employer's stated reason was actually a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804.

Although Plaintiff is not required at this stage to establish a *prima facie* case of discrimination, Plaintiff references this case law and burden-shifting framework to demonstrate that courts permit discrimination to be proven through indirect circumstantial evidence. Defendant

has offered no legitimate, nondiscriminatory reason for its longstanding abuse and harassment for Plaintiff and instead incorrectly argues that Plaintiff must produce direct evidence that he was subjected to such treatment because of his gender – without first satisfying Defendant's own burden of production. Defendant attempts to recast the allegations as a mere "personality conflict" between Plaintiff and one of Defendant's employees, but that characterization is unsupported by the Complaint. Plaintiff alleges that Joyner was assigned to train him and that, after years of mistreatment and multiple complaints to various individuals, he was ultimately reassigned to shadow Amy Clary. Regardless, Defendant still fails to offer any legitimate reason why Joyner would not train Plaintiff. Allowing discriminatory conduct to be obscured or excused as a "personality conflict" at the motion-to-dismiss stage is both disturbing and contrary to well-established principles of employment discrimination law. In any event, Defendant's argument amounts to a premature factual assessment that is properly reserved for the summary judgment stage, after the parties have had the benefit of discovery.

Plaintiff's allegations, taken as true, are sufficient for a reasonable factfinder to infer that he was subjected to a hostile work environment because of his gender. He alleged that he "experienced discriminatory and exclusionary treatment from his female coworkers, who refused to train him as the only male in the office." (Amend. Comp. ¶ 23) He further alleges that "female employees hired the same year as [Plaintiff] were trained and promoted beyond the entry-level task, while [Plaintiff] remained stuck checking in truck drivers for over two years." (*Id.* at ¶ 24). During a team meeting composed entirely of female employees, the trainer, Joyner, who trains office technicians, explicitly refused to train Plaintiff while continuing to train everyone else, despite having no valid reason to conclude he lacked the necessary skills. Even after a manager

confirmed that Plaintiff was qualified, Joyner continued to deny him training, but continued training all female office technicians.

Plaintiff's Amended Complaint contain numerous allegations demonstrating that he was treated differently from everyone else, the only distinguishing factor being his gender. Taken as true, these allegations are more than sufficient at the motion-to-dismiss stage to plead that Plaintiff was subjected to unwelcome conduct because he was male, and that but for his gender, he likely would have received proper training from Joyner and others.

### B. _Severe and Pervasive_

In making the determination whether conduct was severe and pervasive, the court looks to the totality of the circumstances, including the frequency and severity of the offending conduct, whether plaintiff was…humiliated or merely subjected to an offensive utterance, and whether the conduct unreasonably interferes with plaintiff's work performance. _Mangum v. Town of Holly Springs,_ 551 F. Supp. 2d 439, 443 (2008). The purpose of this standard is to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." _Faragher v. City of Boca Raton,_ 524 U.S. 775,778 (1998).

The conduct at issue was far from sporadic; it was pervasive and ongoing, lasting for _years_. Plaintiff made multiple formal complaints about the hostile and exclusionary treatment he faced because of his gender, reporting it to Human Resources, the Corporate Ethics Hotline, and management. He even raised the issue during a team meeting composed entirely of female coworkers, only to be publicly humiliated by Joyner, who concluded – without any basis – that he lacked the necessary skills. The conduct persisted for so long that Plaintiff ultimately had to take FMLA leave due to its impact on his well-being, and even upon returning, he continued to face

14

the same discriminatory treatment. This pattern goes far beyond occasional teasing; it constitutes severe, humiliating, and pervasive discrimination and exclusion over a prolonged period, which, as alleged, severely affected Plaintiff's mental health and employment.

The harassment fundamentally altered the conditions of his employment, ultimately forcing him to take FMLA leave and preventing him from receiving the training necessary for promotions and increased compensation, all of which were a direct result of his employer's and its agents' harassment toward him.

At this stage of the litigation, Plaintiff has elected not to burden the Court with extensive briefing on the intentional infliction of emotional distress and negligent retention and/or supervision claims under North Carolina common law.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court DENY Defendant Cummins Motion to Dismiss Plaintiff's Amended Complaint.

Respectfully submitted this the 16th day of January 2026.

**HAIRSTON LANE, PA**

**_/s/ Taylor C. Rosbrook_**
Taylor C. Rosbrook
N.C. State Bar No. 62631
James E. Hairston, Jr.
N.C. State Bar No. 19687
434 Fayetteville St., Ste. 2350
Raleigh, NC 27601
919-838-5295 (Telephone)
888-510-1160 (Facsimile)
trosbrook@hairstonlane.com
_Attorneys for Plaintiff_

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing **MEMORANDUM IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

Jennifer Staples
Stephen D. Dellinger
Littler Mendelson, P.C.
620 South Tryon Street, Suite 950
Charlotte, NC 28202
jstaples@littler.com
sdellinger@littler.com
*Attorneys for Defendant*

This the 16th day of January 2026.

**HAIRSTON LANE, PA**

***/s/ Taylor C. Rosbrook***
Taylor C. Rosbrook
N.C. State Bar No. 62631
434 Fayetteville St., Ste. 2350
Raleigh, NC 27601
(919) 838-5295 Telephone
(888) 510-1160 Facsimile
trosbrook@hairstonlane.com